UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN T. HILL, | Case No. 2:19-cv-08989-MWF-JC |
| Plaintiff, | ORDER DISMISSING FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND AND DIRECTING PLAINTIFF TO RESPOND TO ORDER |
| v. | |
| RALPH DIAZ, et al., | |
| Defendants. | |

## I.   INTRODUCTION

On October 18, 2019, plaintiff Brian T. Hill, who is in custody at the California Men's Colony ("CMC"), is proceeding *pro se*, and has been granted leave to proceed without prepayment of the full filing fee ("IFP"), filed a Civil Rights Complaint ("Original Complaint") pursuant to 42 U.S.C. § 1983 ("Section 1983"). On September 17, 2020, the Court screened and dismissed the Original Complaint for violation of Rules 10(a) and 11(a) of the Federal Rules of Civil Procedure and failure to state a viable claim for relief. (Docket No. 16).

On November 18, 2020, plaintiff filed a First Amended Complaint ("First Amended Complaint" or "FAC") against the following seven employees of the California Department of Corrections and Rehabilitation ("CDCR"), who are sued in their individual capacities only:  (1) Jim Bonnifield, CMC Community Resources

Manager; (2) R. Layes, CMC Office Technician; (3) Josie Gastelo, CMC Warden; (4) Captain L. Warren, Appeals Examiner; (5) M. Voong, Chief of the CDCR's Office of Appeals; (6) Ralph Diaz, Secretary of the CDCR; and (7) K.J. Allen, Appeals Examiner. (FAC at 3-6).[1] Plaintiff claims defendants violated his First Amendment right to a religious diet and seeks a total of $35,000 in damages. (FAC at 7, 18).

As the First Amended Complaint is deficient in multiple respects, including those detailed below, it is dismissed with leave to amend.

## II.   FIRST AMENDED COMPLAINT

The First Amended Complaint, construed liberally, alleges the following:

On February 16, 2018, defendant Bonnifield, CMC Community Resource Manager, issued plaintiff a CDC 128-B "chrono," stating plaintiff violated the Religious Meat Alternative ("RMA") diet program – also referred to as the Religious Diet Program – by purchasing non-RMA food items from the Canteen on four occasions.[2] (FAC at 7). Despite this notice, however, plaintiff had been adhering to his own Christian religious diet by purchasing white meat and fish products from the Canteen, whereas the food that prison officials were serving purportedly for the RMA diet actually consisted of halal chicken patties, turkey hot dogs, and other meat products that were undercooked and served by non-religious staff who contaminated the food by serving it without using serving utensils. (FAC at 7-8). The February 16 "chrono" effectively required plaintiff to forgo the purchase of Canteen food items that he needed for his health, digestion, and personal religious diet – or else to risk being removed from the RMA program for six months. (FAC at 8). The "chrono" had added pressure because such notices are viewed unfavorably by CDCR agencies such as the Board of Parole Hearings

---

[1] The Court refers to the First Amended Complaint as it is paginated on the Court's electronic docket. (Docket No. 22).

[2] See 15 C.C.R. § 3054.5 ("Any alleged compliance violation of the Religious Diet Program Agreement shall be reported using CDC Form 128-B, General Chron. . . .").

("BPH"), which considers them when deciding whether to grant parole. (FAC at 8). Defendant Bonnifield is aware of this consequence and assertedly intended to pressure plaintiff to withdraw from the RMA program. (FAC at 8).

On March 6, 2018, Bonnifield sent plaintiff another CDCR notice which threatened to terminate plaintiff from the RMA program if he continued to purchase Canteen foods. The notice also directed plaintiff to the form he could use to withdraw from the program. (FAC at 9). The next day, plaintiff sent Bonnifield an inmate request for the 128-B "chrono" to be "retracted" because it violated plaintiff's religious rights. (FAC at 9). On March 10, 2018, plaintiff was interviewed by Farao, the Catholic Chaplain (not a defendant). (FAC at 9). Plaintiff told Farao about his sincerely held religious beliefs, his charity work, and "the basis of these Dietary Laws," among other things, while Farao tried to pressure plaintiff to withdraw from the RMA program, to no avail. (FAC at 9). After this, defendant Layes, a CMC Office Technician, denied plaintiff's requested relief, on behalf of defendant Bonnifield, stating that CDCR policy required the action. (FAC at 10). On March 13, 2018, plaintiff submitted a form appealing the decision to a supervisor, but it was never answered. (FAC at 10).

On March 25, 2018, plaintiff filed a grievance against Bonnifield for the 128-B "chrono." (FAC at 10). On April 16, Bonnifield interviewed plaintiff about the grievance, which assertedly violated California regulations. (FAC at 10). Defendants Bonnifield and Warden Gastelo denied plaintiff's grievance on April 18, based on CDCR policy, and defendants Warren, Diaz, and Voong approved that decision on appeal. (FAC at 11, 15, 16).

On May 24, 2018, Bonnifield issued plaintiff a memorandum "describing the purchase and consumption of other Religious Dietary Food Products[] and meal pick up," and threatening plaintiff's termination from the RMA program if he bought or consumed foods that were not halal or kosher. (FAC at 11-12). This memorandum thus pressured plaintiff to forgo his own religious diet and consume

///

only halal and kosher food even though plaintiff is not Muslim or Jewish.  (FAC at 11).

In October 2018, order forms for institutional food sales were passed out in which (under the direction of Bonnifield and other Religious Review Committee members) some non-halal and non-kosher foods – such as pulled pork sandwich, fried chicken, chicken wings, and tri-tip steak sandwich – were underlined and marked with an asterisk to indicate that they were not approved for the RMA program, with a notice threatening that program participants who purchased or consumed these products would receive a written warning or termination from the program.  (FAC at 11).  However, plaintiff's own religious diet permits chicken, and prison officials even serve chicken patties as part of the RMA diet program.  (FAC at 11).

On May 29, 2019, plaintiff received a memorandum from defendant Bonnifield and the Religious Review Committee that required plaintiff to possess and consume only RMA program (*i.e.*, halal and kosher) foods – except when no RMA foods were being served, in which case plaintiff was permitted to eat the non-RMA foods being served.  (FAC at 12).  The memorandum also stated that all Canteen and quarterly package purchases would be monitored; he must consistently pick up his meals, and a record would be kept indicating whether he had done so; and he could not give away, trade, or sell any portion of the religious meals he received – a restriction that went against plaintiff's own religious belief in being charitable toward the less fortunate.  (FAC at 12-13).  In addition, the memorandum stated that two violations within a six-month period would result in removal from the program.  (FAC at 13).

On June 20, 2019, plaintiff was interviewed by Reverend M. Williams (not a defendant), a Religious Review Committee member, who tried persuading plaintiff to withdraw from the RMA program by discussing plaintiff's Canteen purchases and requiring plaintiff to eat only the RMA halal and kosher foods.  (FAC at 13).  When ///

plaintiff explained his own religious diet, the reverend threatened plaintiff with termination from the program. (FAC at 13).

On July 21, 2019, plaintiff submitted a grievance challenging the efforts of Bonnifield and other Religious Review Committee members to force plaintiff to consume only halal and kosher foods and thus to conform to the diets of other religions. (FAC at 13-14). On August 9, 2019, Bonnifield interviewed plaintiff and explained that plaintiff's purchases of non-RMA foods on April 9 and May 21, 2019 violated CDCR policies, even though plaintiff is not Jewish or Muslim. (FAC at 14). Bonnifield threatened to terminate plaintiff from the RMA program. Plaintiff's grievance was subsequently denied by Bonnifield and Warden Gastelo, and defendants Allen, Diaz, and Voong approved that decision on appeal. (FAC at 14, 15, 16).

Bonnifield ultimately did terminate plaintiff from the program – a decision which Defendants Warden Gastelo, CDCR Secretary Diaz, and others assertedly approved. (FAC at 14). When plaintiff went to the dining hall on the morning of October 8, 2019, and asked for an RMA breakfast, a correctional officer (not a defendant) said plaintiff was no longer approved for RMA meals. (FAC at 14).

### III. PERTINENT LAW

#### A. The Screening Requirement

As plaintiff is a prisoner proceeding IFP on a civil rights complaint against governmental defendants, the Court must screen the Complaint, and is required to dismiss the case at any time it concludes the action is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. See 28 U.S.C. §§ 1915(e)(2)(B), 1915A; 42 U.S.C. § 1997e(c); Byrd v. Phoenix Police Dep't, 885 F.3d 639, 641 (9th Cir. 2018) (citations omitted).

When screening a complaint to determine whether it states any claim that is viable, the Court applies the same standard as it would when evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). See Rosati v. Igbinoso, 791

F.3d 1037, 1039 (9th Cir. 2015) (citation omitted). Rule 12(b)(6), in turn, is read in conjunction with Rule 8(a) of the Federal Rules of Civil Procedure. Zixiang Li v. Kerry, 710 F.3d 995, 998-99 (9th Cir. 2013). Under Rule 8, each complaint filed in federal court must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While Rule 8 does not require detailed factual allegations, at a minimum a complaint must allege enough specific facts to provide *both* "fair notice" of the particular claim being asserted *and* "the grounds upon which [that claim] rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 & n.3 (2007) (citation and quotation marks omitted); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (Rule 8 pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation") (citing Twombly, 550 U.S. at 555).

      To avoid dismissal on screening, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Byrd, 885 F.3d at 642 (citations omitted); see also Johnson v. City of Shelby, Mississippi, 574 U.S. 10, 12 (2014) (per curiam) (Twombly and Iqbal instruct that plaintiff "must plead facts sufficient to show that [plaintiff's] claim has substantive plausibility"). A claim is "plausible" when the facts alleged in the complaint would support a reasonable inference that the plaintiff is entitled to relief from a specific defendant for specific misconduct. Iqbal, 556 U.S. at 678 (citation omitted); see also Keates v. Koile, 883 F.3d 1228, 1242 (9th Cir. 2018) ("[A] [Section 1983] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.") (quoting Iqbal, 556 U.S. at 676); Gauvin v. Trombatore, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988) (complaint "must allege the basis of [plaintiff's] claim against *each* defendant" to satisfy Rule 8 requirements) (emphasis added). Allegations that are "merely consistent with" a defendant's liability, or reflect only "the mere possibility of misconduct" do not "show[] that the pleader is entitled to relief" (as required by Fed. R. Civ. P. 8(a)(2)),
///

and thus are insufficient to state a claim that is "plausible on its face." Iqbal, 556 U.S. at 678-79 (citations and quotation marks omitted).

At this preliminary stage, "well-pleaded factual allegations" in a complaint are assumed true, while "[t]hreadbare recitals of the elements of a cause of action" and "legal conclusion[s] couched as a factual allegation" are not. Id. (citation and quotation marks omitted); Jackson v. Barnes, 749 F.3d 755, 763 (9th Cir. 2014) ("mere legal conclusions 'are not entitled to the assumption of truth'") (quoting Iqbal, 556 U.S. at 678-79), cert. denied, 574 U.S. 1077 (2015).  In addition, the Court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint," Steckman v. Hart Brewing, Inc., 143 F.3d 1293, 1295-96 (9th Cir. 1998) (citation omitted), and "need not [] accept as true allegations that contradict matters properly subject to judicial notice or by exhibit," Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir.), amended on denial of reh'g, 275 F.3d 1187 (9th Cir. 2001) (citation omitted).

In general, civil rights complaints are interpreted liberally in order to give *pro se* plaintiffs "the benefit of any doubt." Byrd, 885 F.3d at 642 (citations and internal quotation marks omitted).  Nonetheless, a *pro se* plaintiff must still follow the rules of procedure that govern all litigants in federal court, including the Rule 8 requirement that a complaint minimally state a short and plain statement of a claim that is plausible on its face. See Ghazali v. Moran, 46 F.3d 52, 54 (9th Cir. 1995) (per curiam) ("Although we construe pleadings liberally in their favor, pro se litigants are bound by the rules of procedure.") (citation omitted), cert. denied, 516 U.S. 838 (1995); see also Chapman v. Pier 1 Imports (U.S.) Inc., 631 F.3d 939, 954 (9th Cir. 2011) (en banc) ("[A] liberal interpretation of a . . . civil rights complaint may not supply essential elements of [a] claim that were not initially pled.") (quoting Pena v. Gardner, 976 F.2d 469, 471 (9th Cir. 1992)) (quotation marks omitted; ellipses in original).

If a *pro se* complaint is dismissed because it does not state a viable claim, the court must freely grant "leave to amend" (that is, give the plaintiff a chance to file a

new, corrected complaint) if it is "at all possible" that the plaintiff could fix the identified pleading errors by alleging different or new facts. Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1058 (9th Cir. 2011) (citation omitted); Lopez v. Smith, 203 F.3d 1122, 1126-30 (9th Cir. 2000) (en banc) (citations and internal quotation marks omitted).

### B.  Section 1983 Claims

To state a Section 1983 claim, a complaint must allege that a defendant, while acting under color of state law, caused a deprivation of the plaintiff's federal rights. 42 U.S.C. § 1983; West v. Atkins, 487 U.S. 42, 48 (1988) (citations omitted); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (citation omitted). There is no vicarious liability in Section 1983 lawsuits. Iqbal, 556 U.S. at 676. (citing, *inter alia*, Monell v. Dep't of Soc. Servs. of the City of New York, 436 U.S. 658, 691 (1978)). Hence, a government official may not be held liable under Section 1983 unless the particular official's own actions caused the alleged constitutional deprivation. OSU Student Alliance v. Ray, 699 F.3d 1053, 1069 (9th Cir. 2012) (citing Iqbal, 556 U.S. at 676), cert. denied, 571 U.S. 819 (2013). A Section 1983 plaintiff must establish both causation-in-fact and proximate (*i.e.*, legal) causation. See Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008). Allegations regarding Section 1983 causation "must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988) (citations omitted). "Sweeping conclusory allegations [regarding causation] will not suffice . . . ." Id. (citation omitted).

An individual "causes" a constitutional deprivation basically when he or she (1) "does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation"; or (2) "set[s] in motion a series of acts by others which the [defendant] knows or reasonably should know would cause others to inflict the constitutional injury."

///

Lacey v. Maricopa County, 693 F.3d 896, 915 (9th Cir. 2012) (en banc) (quoting Johnson v. Duffy, 588 F.2d 740, 743-44 (9th Cir. 1978)) (quotation marks omitted).

Similarly, a government official acting in a supervisory capacity "causes" a deprivation to the extent he or she (1) personally participates in or directs a subordinate's constitutional violation; or (2) was not "physically present when the [plaintiff's] injury occurred," but the constitutional deprivation can, nonetheless, be "directly attributed" to the supervisor's own wrongful conduct. Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir. 2011), cert. denied 566 U.S. 982 (2012); see also OSU Student Alliance, 699 F.3d at 1069 (citing Iqbal, 556 U.S. at 676). Under the latter theory, even absent "overt personal participation," a supervisor may be liable under Section 1983 if he or she created, promulgated, implemented, advanced, or was otherwise responsible for the continued operation of a policy that "requires subordinates to commit constitutional violations," and enforcement of the policy (either by the defendant-supervisor or his or her subordinates) proximately caused the plaintiff's constitutional injury. OSU Student Alliance, 699 F.3d at 1076 (citing Dodds v. Richardson, 614 F.3d 1185, 1199 (10th Cir. 2010), cert. denied, 563 U.S. 960 (2011)); see also Crowley v. Bannister, 734 F.3d 967, 977 (9th Cir. 2013) (supervisory officials may be held liable "even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of a constitutional violation'") (citation and internal quotation marks omitted).

### C. First Amendment – Free Exercise of Religion

Prisoners "retain protections afforded by the First Amendment" including the right to "the free exercise of religion." O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987) (citations omitted), superseded by statute on other grounds, 42 U.S.C. §§ 2000cc, et seq. However, as a consequence of incarceration, a prisoner's First Amendment rights are necessarily "more limited in scope than the constitutional rights held by individuals in society at large." Shaw v. Murphy, 532 U.S. 223, 229 (2001). An inmate retains only "those First Amendment rights that are not

inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." Pell v. Procunier, 417 U.S. 817, 822 (1974).

To state a First Amendment free exercise claim, an inmate must allege that a prison official's actions (1) "substantially burden[ed]" the inmate's exercise of a sincerely held religious belief; and (2) did so in an unreasonable manner – *i.e.*, the official's actions were not "rationally related to legitimate penological interests." See O'Lone, 482 U.S. at 348-50; Jones v. Williams, 791 F.3d 1023, 1031, 1033 (9th Cir. 2015) (citation omitted); Shakur v. Schriro, 514 F.3d 878, 884-85 (9th Cir. 2008) (citations omitted). "[G]overnment action places a substantial burden on an individual's right to free exercise of religion when it tends to coerce the individual to forego [his or] her sincerely held religious beliefs or to engage in conduct that violates those beliefs." Jones v. Williams, 791 F.3d at 1031-33 (citations omitted).

## IV. DISCUSSION

As explained below, the First Amended Complaint fails to state a claim for relief and is dismissed with leave to amend.

### A. Plaintiff Fails to State a First Amendment Claim

Plaintiff claims that defendants violated his First Amendment right to a religious diet. "Inmates . . . have the right to be provided with food sufficient to sustain them in good health that satisfies the dietary laws of their religion." McElyea v. Babbitt, 833 F.2d 196, 198 (9th Cir. 1987) (per curiam); Ashelman v. Wawrzaszek, 111 F.3d 674, 677 (9th Cir. 1997). However, plaintiff does not plausibly allege that his First Amendment rights have been denied. To the contrary, plaintiff was admitted into the RMA program, which limited him to program-approved foods that complied with plaintiff's own religious diet restrictions. Plaintiff does not allege that he was induced to consume foods that violated his religious beliefs. Rather, plaintiff complains that the program excluded some other foods, such as chicken, that were permitted by plaintiff's own religious beliefs. (See FAC at 7-14). Because plaintiff does not plead facts plausibly showing that any non-program foods were mandated by plaintiff's sincerely held religious beliefs,

he fails to demonstrate that the program's exclusion of certain foods substantially burdened those beliefs.³  See, e.g., Sefeldeen v. Alameida, 238 F. App'x 204, 206 (9th Cir. 2007) (Muslim inmate's religious exercise was not substantially burdened when he did not allege that eating vegetarian meals violated his religious beliefs); Johnson v. Horn, 150 F.3d 276 (3d Cir. 1998) (service to Jewish inmate of cold food that complied with kosher requirements satisfied First Amendment rights despite inmate's desire for hot meals), overruled on other grounds, DeHart v. Horn, 227 F.3d 47 (3d Cir. 2000); Gumienny v. McDowell, 2018 WL 6113084, at *5 (C.D. Cal. 2018) ("Plaintiff's free exercise claims appear to be based on Defendants' refusal to allow Plaintiff flexibility with the Vegetarian Diet Program so that he can occasionally opt out of receiving the vegetarian meal and receive the regular chicken entrée instead.  However, Plaintiff has not alleged that a wholly vegetarian diet, for which he was approved under the Religious Diet Program, substantially burdens his religious beliefs.") (citations omitted).  The First Amendment does not guarantee plaintiff's right to obtain any desired food that fits his beliefs.  See Gumienny, 2018 WL 6113084, at *5 ("Although Plaintiff states that he can eat chicken under his religious tenets and sometimes chooses to do so, he has not demonstrated that consuming a diet that lacks chicken forces him to violate his sincerely held religious beliefs."); Moore v. Cucchi, 2011 WL 4594907, *4 (D. N.J. 2011) ("It can be inferred from Plaintiff's allegations that he was not satisfied with the non-meat diet he received at [the prison].  However, an inmate has no constitutional right to a diet based on personal preference.").

///

---

³Plaintiff does assert that the program pressured him to either "forgo the purchase of these *Religiously Mandated* Food Products," or risk removal from the program.  (FAC at 8) (emphasis added).  However, he fails to plead any non-conclusory facts showing that any non-program foods were required by his religious beliefs.  See Iqbal, 556 U.S. at 678, 686.  Moreover, his allegations on this point are ambiguous, at best.  He asserts, for example, that officials prohibited him from purchasing chicken "even though chicken is a Religiously Mandated Product that the Plaintiff *can consume* . . . ."  (FAC at 12) (emphasis added).

Although plaintiff also alleges that the RMA program sometimes served meals that were undercooked or otherwise unsuitable (see FAC at 5-6), he does not allege facts showing that this substantially burdened his religious practice. For example, plaintiff does not indicate how often such foods were served, and to what extent the program-approved diet may have posed a harm to his health or conflicted with his religious beliefs. Moreover, while plaintiff suggests that the poor quality of the meals being served induced him to purchase foods from the Canteen, he does not allege that he was unable to find suitable program-approved foods in the Canteen, or that only non-approved foods were available there. Plaintiff thus fails to show that the terms of the program were inadequate to provide him with a healthy diet that complied with his own religious beliefs, such that he was effectively pressured to violate his religious beliefs or be excluded from the program. See Shakur v. Schriro, 514 F.3d 878, 885 (9th Cir. 2008) (Free Exercise Clause was implicated by prison's refusal to provide a kosher meat diet to Muslim plaintiff because the vegetarian diet provided for Muslim inmates caused him gastrointestinal distress that interfered with his religious activities as a Muslim, and plaintiff sincerely believed kosher meat was personally necessary to maintain his spirituality); see also Patterson v. Ryan, 2012 WL 1956425, at *6 (D. Ariz. May 31, 2012) ("Unlike the prisoner-plaintiff in Shakur, Plaintiff does not allege that the vegetarian diet provided by the prison caused him gastrointestinal problems or any other health problems that in turn substantially burdened his religious activities."), aff'd sub nom., Patterson v. Moore, 591 F. App'x 622 (9th Cir. 2015).

Finally, while plaintiff alleges that he was ultimately removed from the program, this occurred only after he continued to violate the terms of the program despite receiving multiple warnings of the consequences of these violations. (See FAC at 7-14). Because plaintiff fails to show that he was induced or pressured to violate the program's terms or his own beliefs, he cannot demonstrate that his subsequent removal infringed on his First Amendment rights. Accordingly, plaintiff fails to state a First Amendment claim against any defendant.

### B. Plaintiff Fails to State a First Amendment Claim Against Defendants Who Reviewed Administrative Appeals

Plaintiff asserts a First Amendment claim against several defendants – Layes, Warren, Voong, Allen, and Diaz – who had no alleged role in deciding plaintiff's meal provisions and restrictions. Rather, such defendants are alleged only to have reviewed plaintiff's administrative grievances or appeals challenging such restrictions. (See FAC at 3-5, 16-17). However, a prison official's processing of an inmate's appeals, without more, cannot serve as a basis for Section 1983 liability.[4] See Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (Prisoners do not have a "separate constitutional entitlement to a specific prison grievance procedure.") (citation omitted), cert. denied, 541 U.S. 1063 (2004); Mann v. Adams, 855 F.2d 639, 640 (9th Cir.) (due process not violated simply because defendant fails properly to process grievances submitted for consideration), cert. denied, 488 U.S. 898 (1988); Shallowhorn v. Molina, 572 F. App'x 545, 547 (9th Cir. 2014) (district court properly dismissed Section 1983 claims against defendants who "were only involved in the appeals process") (citing Ramirez, 334 F.3d at 860). Moreover, it is implausible that defendant Diaz, who was responsible for overseeing all California prisons as Secretary of the CDCR, had any personal knowledge of plaintiff's request for relief, nor any personal role in denying such relief or otherwise setting the religious diet policies from which plaintiff sought relief. See Starr v. Baca, 652 F.3d at 1207 (government official acting in a supervisory capacity may be held personally

---

[4] While a prison official's alleged failure to process an inmate grievance may implicate a prisoner's First Amendment right of access to the courts, the First Amended Complaint fails to state such a claim because plaintiff does not plausibly allege that any defendant *actually failed* to process his grievances, that an actual injury resulted from any failure to process plaintiff's grievances or that any such conduct actually "hindered his efforts to pursue a [nonfrivolous] legal claim." Lewis v. Casey, 518 U.S. 343, 351-53, 354-55 (1996) (To establish any denial of access claim, a plaintiff must show that he suffered an "actual injury" as a result of the defendants' actions.); see generally Bounds v. Smith, 430 U.S. 817, 821 (1977) (well-established that prisoners have a constitutional right of access to the courts), abrogated in part on other grounds by, Lewis, 518 U.S. at 354.

liable only if the official personally participated in or directed the violation or the violation otherwise can be "directly attributed" to the supervisor's own wrongful conduct).

Accordingly, even if plaintiff had sufficiently alleged a violation of his First Amendment rights based on his religious diet – which, as explained above, he has not – he still would fail to state a claim against defendants Layes, Warren, Allen, Voong, and Diaz because he does not allege facts showing that these defendants had a personal role in determining the available RMA program diets, or the authority to change the restrictions with respect to plaintiff.

## V.  ORDERS[5]

In light of the foregoing, IT IS HEREBY ORDERED that the First Amended Complaint is dismissed with leave to amend.

IT IS FURTHER ORDERED that within twenty (20) days of the date of this Order, plaintiff must do one of the following:

1. File a Second Amended Complaint which cures the pleading defects set forth herein;[6] or

---

[5] The Court's orders herein constitute non-dispositive rulings on pretrial matters. To the extent a party disagrees with such non-dispositive rulings, such party may file a motion for review by the assigned District Judge within fourteen (14) days. See Local Rule 72-2.1. To the extent a party believes the rulings to be dispositive, rather than non-dispositive, such party has the right to object to this Court's determination that the rulings are non-dispositive within fourteen (14) days. A party will be foreclosed from challenging the rulings herein if such party does not seek review thereof, or object thereto.

[6] The Clerk is directed to provide plaintiff with a Central District of California Civil Rights Complaint Form, CV-66, to facilitate plaintiff's filing of a Second Amended Complaint if he elects to proceed in that fashion. Any Second Amended Complaint must: (a) be labeled "Second Amended Complaint"; (b) be complete in and of itself and not refer in any manner to prior pleadings – i.e., it must include all claims on which plaintiff seeks to proceed (Local Rule 15-2); (c) contain a "short and plain" statement of each of the claim(s) for relief (Fed. R. Civ. P. 8(a)); (d) make each allegation "simple, concise and direct" (Fed. R. Civ. P. 8(d)(1)); (e) set forth clearly the sequence of events giving rise to the claim(s) in sequentially "numbered paragraphs, each limited as far as practicable to a single set of circumstances" (Fed. R. Civ. P. 10(b)); (f) allege specifically what the defendant did and how that individual's conduct specifically violated plaintiff's civil rights; (g) state the names of all defendants in the caption and not include

    2.    Sign and file the attached Notice of Dismissal which will result in the voluntary dismissal of this action without prejudice; or

    3.    File a Notice of Intent to Stand on First Amended Complaint, indicating plaintiff's intent to stand on the First Amended Complaint despite the pleading defects set forth herein, which may result in the dismissal of this action in its entirety based upon such defects.

**Plaintiff is cautioned that plaintiff's failure timely to file a Second Amended Complaint, a Notice of Dismissal, or a Notice of Intent to Stand on First Amended Complaint may be deemed plaintiff's admission that amendment is futile, and may result in the dismissal of this action with or without prejudice on the grounds set forth above, on the ground that amendment is futile, for failure diligently to prosecute and/or for failure to comply with this Order.**

IT IS SO ORDERED.

DATED: April 7, 2022

                                          /s/
                              Honorable Jacqueline Chooljian
                              UNITED STATES MAGISTRATE JUDGE

---

in the body of the Second Amended Complaint defendants who are not also named in the caption (Fed. R. Civ. P. 10(a)); and (h) not add defendants or claims that are not reasonably related to the claim asserted in prior pleadings in this action.