

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

BRIAN T. HILL,

                Plaintiff,

     v.

RALPH DIAZ, et al.,

                Defendants.

Case No. 2:19-cv-08989-MWF-JC

ORDER DISMISSING SECOND
AMENDED COMPLAINT AS AGAINST
MULTIPLE DEFENDANTS WITH
LEAVE TO AMEND AND DIRECTING
PLAINTIFF TO RESPOND TO ORDER

17

## I.    INTRODUCTION

18
19
20
21
22
23
24
25
26
27
28

      On October 18, 2019, plaintiff Brian T. Hill, who is in custody at the
California Men's Colony ("CMC"), is proceeding *pro se*, and has been granted leave
to proceed without prepayment of the full filing fee ("IFP"), filed a Civil Rights
Complaint ("Original Complaint") pursuant to 42 U.S.C. § 1983 ("Section 1983"),
against thirteen employees of the California Department of Corrections and
Rehabilitation ("CDCR"), sued in their individual and official capacities, for
violation of plaintiff's First Amendment right to a religious diet.  On September 17,
2020, the District Judge screened and dismissed the Original Complaint for violation
of Rules 10(a) and 11(a) of the Federal Rules of Civil Procedure and failure to state
a viable claim for relief.  (Docket No. 16).

///

On November 18, 2020, plaintiff filed a First Amended Complaint (or "FAC") asserting essentially the same First Amendment claim against seven CDCR employees, sued solely in their individual capacities.  On April 7, 2022, the Magistrate Judge screened and dismissed the First Amended Complaint for failure to state a claim for relief.  (Docket No. 30).  On May 12, 2022, the District Judge found that the Magistrate Judge's foregoing dismissal order was correct, overruled plaintiff's objections thereto, and denied plaintiff's motion for review thereof.  (Docket No. 37).

On August 11, 2022, plaintiff filed the operative Second Amended Complaint (or "SAC"), which seeks $45,000 in damages and again asserts essentially the same First Amendment claim against the same seven CDCR employees named in the First Amended Complaint, sued solely in their individual capacities:  (1) Jim Bonnifield, CMC Community Resources Manager; (2) B. Layes, CMC Office Technician; (3) Josie Gastelo, CMC Warden; (4) Captain L. Warren, Appeals Examiner; (5) M. Voong, Chief of the CDCR's Office of Appeals; (6) Ralph Diaz, Secretary of the CDCR; and (7) K.J. Allen, Appeals Examiner.  (SAC at 6-19).[1]

As explained below, the Second Amended Complaint fails to state a claim against at least five of these defendants – Layes, Warren, Voong, Diaz, and Allen – and is therefore dismissed as against these five defendants with leave to amend.  If plaintiff elects not to amend and to proceed solely against defendants Bonnifield and Gastelo – one of the options he is afforded below – the Court will authorize service upon, and this action will proceed solely against such two remaining defendants.

///
///
///
///

---

[1] The Court refers to the Second Amended Complaint as it is paginated on the Court's electronic docket.  (Docket No. 44).

1

**II.   SECOND AMENDED COMPLAINT**

2

The Second Amended Complaint, construed liberally, alleges the following:

3

On February 16, 2018, defendant Bonnifield, CMC Community Resource

4

Manager, issued plaintiff a CDC 128-B "chrono," stating plaintiff violated the

5

Religious Meat Alternative ("RMA") diet program – also referred to as the

6

Religious Diet Program – by purchasing non-RMA food items from the prison

7

canteen.[2]  (SAC at 7).  Despite this notice, plaintiff had been adhering to his own

8

religious diet[3] by purchasing white meat and fish products from the canteen,

9

whereas the food that prison officials were serving purportedly for the RMA diet

10

actually consisted of halal chicken patties, turkey hot dogs, and other meat products

11

that were undercooked and served by non-religious staff who contaminated the food

12

by serving it without using serving utensils.  (SAC at 10-11).  The February 16

13

"chrono" effectively required plaintiff to forgo the purchase of canteen food items

14

that he needed for his health, digestion, and personal religious diet – or else to risk

15

being removed from the RMA program.  (SAC at 11).  The "chrono" had added

16

pressure because such notices are viewed unfavorably by CDCR agencies, such as

17

when deciding whether to grant parole.  (SAC at 11).  Defendant Bonnifield is

18

aware of this consequence and assertedly intended to pressure plaintiff to withdraw

from the RMA program.  (SAC at 11).

19

On March 6, 2018, Bonnifield sent plaintiff another CDCR notice which

20

threatened to terminate plaintiff from the RMA program for six months if he

21

continued to purchase canteen foods.  The notice also directed plaintiff to the form

22

he could use to withdraw from the program.  (SAC at 11).  The next day, plaintiff

23

sent Bonnifield an inmate request for the 128-B "chrono" to be "retracted" because

24

25

[2]See Cal. Code Regs. tit. 15, § 3054.5 ("Any alleged compliance violation of the Religious

26

Diet Program Agreement shall be reported using CDC Form 128-B, General Chrono . . . .").

27

[3]The Second Amended Complaint does not specify plaintiff's religion but states that he is

28

not Jewish or Muslim.  (See SAC at 3, 13).  His First Amended Complaint alleged that he
practices Christianity. (See FAC at 7).

it violated plaintiff's religious rights.  (SAC at 12).  Defendant Layes, a CMC Office Technician, denied plaintiff's requested relief, on behalf of defendants Bonnifield and CMC Warden Gastelo.  (SAC at 12).  This set in motion a chain of events to further violate plaintiff's religious rights.  (SAC at 12).  On March 13, 2018, plaintiff submitted a form appealing the decision to a supervisor, but it was never answered.  (SAC at 12).

On March 25, 2018, plaintiff filed a grievance against Bonnifield challenging the violation of his religious rights under the First Amendment.  (SAC at 12). Bonnifield interviewed plaintiff about the grievance, which assertedly violated CDCR policy.  (SAC at 12).  Defendants Bonnifield and Warden Gastelo then denied plaintiff's grievance, and defendants Warren, Diaz, and Voong approved that decision on appeal.  (SAC at 12-13).

On May 24, 2018, Bonnifield issued plaintiff a memorandum "describing the purchase and consumption of other Religious Dietary Food Products[] and Meal Pick-up," and threatening plaintiff's termination from the RMA program if he bought or consumed foods that were not halal or kosher.  (SAC at 13).  This memorandum thus pressured plaintiff to forgo his own religious diet and consume only halal and kosher food even though plaintiff is not Muslim or Jewish.  (FAC at 13).

In October 2018, in an attempt to force plaintiff to forgo purchases of his own "Religiously Mandated Food Products" such as fried chicken and chicken wings, Bonnifield and others issued order forms for institutional food sales in which non-halal and non-kosher foods were underlined and marked with an asterisk to indicate that they were not approved for the RMA program, with a notice threatening that program participants who purchased or consumed these products would receive a written warning or termination from the program.  (SAC at 13-14).

On May 29, 2019, Bonnifield and the Religious Review Committee issued plaintiff a memorandum advising plaintiff that he was required to possess and consume only RMA program (*i.e.*, halal and kosher) foods; that all canteen and

4

quarterly package purchases would be monitored; that he must consistently pick up his meals, and a record would be kept indicating whether he had done so; and that he could not give away, trade, or sell any portion of the religious meals he received. (SAC at 14).  The memorandum stated that two violations within a six-month period would result in removal from the program.  (SAC at 14).

On June 20, 2019, a Religious Review Committee member ordered plaintiff to consume only the RMA halal and kosher foods.  (SAC at 14).  When plaintiff told this person about the other "Religiously mandated Food Products[] that can be consumed" in plaintiff's religion, plaintiff was threatened with termination from the program.  (SAC at 14-15).

On July 21, 2019, plaintiff submitted a grievance challenging the efforts of Bonnifield and other Religious Review Committee members to force plaintiff to consume only halal and kosher foods and thus to conform to the diets of other religions.  (SAC at 15).  In an interview with plaintiff on August 9, 2019, Bonnifield explained that plaintiff's purchases of non-RMA foods on April 9 and May 21, 2019 violated CDCR policies and threatened to terminate plaintiff from the RMA program.  (SAC at 15).  Plaintiff's grievance was subsequently denied in a decision approved by defendants Gastelo, Allen, and Voong.  (See SAC at 16-17).

On October 8, 2019, plaintiff was informed that he was no longer on the RMA list, which meant that defendant Bonnifield and others had initiated procedures to terminate him from the program.  (SAC at 15).

## III.   PERTINENT LAW

### A.   The Screening Requirement

As plaintiff is a prisoner proceeding IFP on a civil rights complaint against governmental defendants, the Court must screen the Complaint, and is required to dismiss the case at any time it concludes the action is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.  See 28 U.S.C. §§ 1915(e)(2)(B),
///

1915A; 42 U.S.C. § 1997e(c); <u>Byrd v. Phoenix Police Dep't</u>, 885 F.3d 639, 641 (9th Cir. 2018) (citations omitted).

When screening a complaint to determine whether it states any claim that is viable, the Court applies the same standard as it would when evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  <u>See</u> <u>Rosati v. Igbinoso</u>, 791 F.3d 1037, 1039 (9th Cir. 2015) (citation omitted).  Rule 12(b)(6), in turn, is read in conjunction with Rule 8(a) of the Federal Rules of Civil Procedure.  <u>Zixiang Li v. Kerry</u>, 710 F.3d 995, 998-99 (9th Cir. 2013).  Under Rule 8, each complaint filed in federal court must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  While Rule 8 does not require detailed factual allegations, at a minimum a complaint must allege enough specific facts to provide *both* "fair notice" of the particular claim being asserted *and* "the grounds upon which [that claim] rests."  <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 & n.3 (2007) (citation and quotation marks omitted); <u>see also</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (Rule 8 pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation") (citing <u>Twombly</u>, 550 U.S. at 555).

To avoid dismissal on screening, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  <u>Byrd</u>, 885 F.3d at 642 (citations omitted); <u>see also</u> <u>Johnson v. City of Shelby, Mississippi</u>, 574 U.S. 10, 12 (2014) (per curiam) (<u>Twombly</u> and <u>Iqbal</u> instruct that plaintiff "must plead facts sufficient to show that [plaintiff's] claim has substantive plausibility").  A claim is "plausible" when the facts alleged in the complaint would support a reasonable inference that the plaintiff is entitled to relief from a specific defendant for specific misconduct.  <u>Iqbal</u>, 556 U.S. at 678 (citation omitted); <u>see also</u> <u>Keates v. Koile</u>, 883 F.3d 1228, 1242 (9th Cir. 2018) ("[A] [Section 1983] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.") (quoting <u>Iqbal</u>, 556 U.S. at 676); <u>Gauvin v. Trombatore</u>, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988) (complaint

6

"must allege the basis of [plaintiff's] claim against *each* defendant" to satisfy Rule 8 requirements) (emphasis added).  Allegations that are "merely consistent with" a defendant's liability, or reflect only "the mere possibility of misconduct" do not "show[] that the pleader is entitled to relief" (as required by Fed. R. Civ. P. 8(a)(2)), and thus are insufficient to state a claim that is "plausible on its face."  Iqbal, 556 U.S. at 678-79 (citations and quotation marks omitted).

At this preliminary stage, "well-pleaded factual allegations" in a complaint are assumed true, while "[t]hreadbare recitals of the elements of a cause of action" and "legal conclusion[s] couched as a factual allegation" are not.  Id. (citation and quotation marks omitted); Jackson v. Barnes, 749 F.3d 755, 763 (9th Cir. 2014) ("mere legal conclusions 'are not entitled to the assumption of truth'") (quoting Iqbal, 556 U.S. at 678-79), cert. denied, 574 U.S. 1077 (2015).  In addition, the Court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint," Steckman v. Hart Brewing, Inc., 143 F.3d 1293, 1295-96 (9th Cir. 1998) (citation omitted), and "need not [] accept as true allegations that contradict matters properly subject to judicial notice or by exhibit," Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir.), amended on denial of reh'g, 275 F.3d 1187 (9th Cir. 2001) (citation omitted).

In general, civil rights complaints are interpreted liberally in order to give *pro se* plaintiffs "the benefit of any doubt."  Byrd, 885 F.3d at 642 (citations and internal quotation marks omitted).  Nonetheless, a *pro se* plaintiff must still follow the rules of procedure that govern all litigants in federal court, including the Rule 8 requirement that a complaint minimally state a short and plain statement of a claim that is plausible on its face.  See Ghazali v. Moran, 46 F.3d 52, 54 (9th Cir. 1995) (per curiam) ("Although we construe pleadings liberally in their favor, pro se litigants are bound by the rules of procedure.") (citation omitted), cert. denied, 516 U.S. 838 (1995); see also Chapman v. Pier 1 Imports (U.S.) Inc., 631 F.3d 939, 954 (9th Cir. 2011) (en banc) ("[A] liberal interpretation of a . . . civil rights complaint may not supply essential elements of [a] claim that were not initially pled.")

7

1  (quoting Pena v. Gardner, 976 F.2d 469, 471 (9th Cir. 1992)) (quotation marks

2  omitted; ellipses in original).

3        If a *pro se* complaint is dismissed because it does not state a viable claim, the

4  court must freely grant "leave to amend" (that is, give the plaintiff a chance to file a

5  new, corrected complaint) if it is "at all possible" that the plaintiff could fix the

6  identified pleading errors by alleging different or new facts.  Cafasso, U.S. ex rel. v.

7  Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1058 (9th Cir. 2011) (citation

8  omitted); Lopez v. Smith, 203 F.3d 1122, 1126-30 (9th Cir. 2000) (en banc)

9  (citations and internal quotation marks omitted).

10       **B.    Section 1983 Claims**

11       To state a Section 1983 claim, a complaint must allege that a defendant, while

12 acting under color of state law, caused a deprivation of the plaintiff's federal rights.

13 42 U.S.C. § 1983; West v. Atkins, 487 U.S. 42, 48 (1988) (citations omitted); Taylor

14 v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (citation omitted).  There is no

15 vicarious liability in Section 1983 lawsuits.  Iqbal, 556 U.S. at 676.  (citing, *inter*

16 *alia*, Monell v. Dep't of Soc. Servs. of the City of New York, 436 U.S. 658, 691

17 (1978)).  Hence, a government official may not be held liable under Section 1983

18 unless the particular official's own actions caused the alleged constitutional

19 deprivation.  OSU Student Alliance v. Ray, 699 F.3d 1053, 1069 (9th Cir. 2012)

20 (citing Iqbal, 556 U.S. at 676), cert. denied, 571 U.S. 819 (2013).  A Section 1983

21 plaintiff must establish both causation-in-fact and proximate (*i.e.*, legal) causation.

22 See Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

23 Allegations regarding Section 1983 causation "must be individualized and focus on

24 the duties and responsibilities of each individual defendant whose acts or omissions

25 are alleged to have caused a constitutional deprivation."  Leer v. Murphy, 844 F.2d

26 628, 633 (9th Cir. 1988) (citations omitted).  "Sweeping conclusory allegations

27 [regarding causation] will not suffice . . . ."  Id. (citation omitted).

28       An individual "causes" a constitutional deprivation basically when he or she

   (1) "does an affirmative act, participates in another's affirmative acts, or omits to

                                        8

perform an act which he is legally required to do that causes the deprivation"; or (2) "set[s] in motion a series of acts by others which the [defendant] knows or reasonably should know would cause others to inflict the constitutional injury." Lacey v. Maricopa County, 693 F.3d 896, 915 (9th Cir. 2012) (en banc) (quoting Johnson v. Duffy, 588 F.2d 740, 743-44 (9th Cir. 1978)) (quotation marks omitted).

Similarly, a government official acting in a supervisory capacity "causes" a deprivation to the extent he or she (1) personally participates in or directs a subordinate's constitutional violation; or (2) was not "physically present when the [plaintiff's] injury occurred," but the constitutional deprivation can, nonetheless, be "directly attributed" to the supervisor's own wrongful conduct. Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir. 2011), cert. denied 566 U.S. 982 (2012); see also OSU Student Alliance, 699 F.3d at 1069 (citing Iqbal, 556 U.S. at 676). Under the latter theory, even absent "overt personal participation," a supervisor may be liable under Section 1983 if he or she created, promulgated, implemented, advanced, or was otherwise responsible for the continued operation of a policy that "requires subordinates to commit constitutional violations," and enforcement of the policy (either by the defendant-supervisor or his or her subordinates) proximately caused the plaintiff's constitutional injury. OSU Student Alliance, 699 F.3d at 1076 (citing Dodds v. Richardson, 614 F.3d 1185, 1199 (10th Cir. 2010), cert. denied, 563 U.S. 960 (2011)); see also Crowley v. Bannister, 734 F.3d 967, 977 (9th Cir. 2013) (supervisory officials may be held liable "even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of a constitutional violation'") (citation and internal quotation marks omitted).

**C.      First Amendment – Free Exercise of Religion**

Prisoners "retain protections afforded by the First Amendment" including the right to "the free exercise of religion." O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987) (citations omitted), superseded by statute on other grounds, 42 U.S.C. §§ 2000cc, et seq. However, as a consequence of incarceration, a prisoner's First

Amendment rights are necessarily "more limited in scope than the constitutional rights held by individuals in society at large." Shaw v. Murphy, 532 U.S. 223, 229 (2001). An inmate retains only "those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." Pell v. Procunier, 417 U.S. 817, 822 (1974). Among the First Amendment free-exercise rights retained by inmates is "the right to be provided with food sufficient to sustain them in good health that satisfies the dietary laws of their religion." McElyea v. Babbitt, 833 F.2d 196, 198 (9th Cir. 1987) (per curiam); Ashelman v. Wawrzaszek, 111 F.3d 674, 677 (9th Cir. 1997).

To state a First Amendment free exercise claim, an inmate must allege that a prison official's actions (1) "substantially burden[ed]" the inmate's exercise of a sincerely held religious belief; and (2) did so in an unreasonable manner – i.e., the official's actions were not "rationally related to legitimate penological interests." See O'Lone, 482 U.S. at 348-50; Jones v. Williams, 791 F.3d 1023, 1031, 1033 (9th Cir. 2015) (citation omitted); Shakur v. Schriro, 514 F.3d 878, 884-85 (9th Cir. 2008) (citations omitted). "[G]overnment action places a substantial burden on an individual's right to free exercise of religion when it tends to coerce the individual to forego [his or] her sincerely held religious beliefs or to engage in conduct that violates those beliefs." Jones v. Williams, 791 F.3d at 1031-33 (citations omitted).

## IV.   DISCUSSION

As noted above, the Second Amended Complaint asserts that seven defendants – Bonnifield, Layes, Gastelo, Warren, Voong, Diaz, and Allen – violated plaintiff's First Amendment right to a religious diet. Yet, several of these defendants – Layes, Warren, Voong, Allen, and Diaz – had no apparent role in deciding plaintiff's meal provisions and restrictions. For the reasons explained below, plaintiff's claim against these five defendants is dismissed with leave to amend.

Defendants Layes, Warren, Voong, and Allen are alleged only to have reviewed plaintiff's administrative grievances or appeals challenging plaintiff's

10

religious food restrictions.  (See SAC at 6-8, 12-18).  A prison official's processing of an inmate's appeals, without more, cannot serve as a basis for Section 1983 liability.[4]  See Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (Prisoners do not have a "separate constitutional entitlement to a specific prison grievance procedure.") (citation omitted), cert. denied, 541 U.S. 1063 (2004); Mann v. Adams, 855 F.2d 639, 640 (9th Cir.) (due process not violated simply because defendant fails properly to process grievances submitted for consideration), cert. denied, 488 U.S. 898 (1988); Shallowhorn v. Molina, 572 F. App'x 545, 547 (9th Cir. 2014) (district court properly dismissed Section 1983 claims against defendants who "were only involved in the appeals process") (citing Ramirez, 334 F.3d at 860).  Although plaintiff offers conclusory assertions that defendants Warren, Voong, and Allen had the statutory authority and lawful ability to correct the alleged violation of plaintiff's rights (see SAC at 12-13, 16-18), he fails to plausibly show that these defendants – two Appeal Examiners (Warren and Allen) and a Chief of Inmate Appeals (Voong) (SAC at 8) – had any personal responsibility or authority to determine the terms of plaintiff's meal plan.  As for defendant Layes, an "Office Technician," plaintiff offers only the vague allegation that Layes "answered" plaintiff's March 2018 grievance "on behalf of" defendant Bonnifield "within his/her lawful ability and statutory authority to do so, denying the Plaintiff all relief on behalf of him/herself, Defendant Jim Bonnifield, and Defendant Josie Gastelo[.]" (SAC at 12).  Layes's responsibilities for or authority over such matters remains unclear.  To state a claim

---

[4]While a prison official's alleged failure to process an inmate grievance may implicate a prisoner's First Amendment right of access to the courts, the Second Amended Complaint fails to state such a claim because plaintiff does not plausibly allege that any defendant *actually failed* to process his grievances, that an actual injury resulted from any failure to process plaintiff's grievances or that any such conduct actually "hindered his efforts to pursue a [nonfrivolous] legal claim." Lewis v. Casey, 518 U.S. 343, 351-53, 354-55 (1996) (To establish any denial of access claim, a plaintiff must show that he suffered an "actual injury" as a result of the defendants' actions.); see generally Bounds v. Smith, 430 U.S. 817, 821 (1977) (well-established that prisoners have a constitutional right of access to the courts), abrogated in part on other grounds by, Lewis, 518 U.S. at 354.

against this defendant, plaintiff must plead facts showing how this defendant was personally involved in violating plaintiff's rights, based on the defendant's own duties and responsibilities. See Leer, 844 F.2d at 633.

Defendant Diaz, as Secretary of the CDCR, was responsible for overseeing all California prisons in essentially all respects.  As such, notwithstanding plaintiff's assertions about Diaz's broad authority and responsibilities (SAC at 18), it is implausible that Secretary Diaz had any personal knowledge of plaintiff's request for relief, nor any personal role in denying such relief or otherwise setting the religious diet policies from which plaintiff sought relief.  See Starr v. Baca, 652 F.3d at 1207 (government official acting in a supervisory capacity may be held personally liable only if the official personally participated in or directed the violation or the violation otherwise can be "directly attributed" to the supervisor's own wrongful conduct).

Accordingly, plaintiff's Second Amended Complaint fails to state a claim against at least defendants Layes, Warren, Allen, Voong, and Diaz because plaintiff does not allege facts plausibly showing that these defendants had a personal role in determining the available RMA program diets, or the authority to change the restrictions with respect to plaintiff.

///
///
///
///
///
///
///
///
///
///
///

**V.   ORDERS**[5]

In light of the foregoing, IT IS HEREBY ORDERED that the Second Amended Complaint is dismissed as against defendants Layes, Warren, Allen, Voong, and Diaz with leave to amend.[6]

IT IS FURTHER ORDERED that within twenty (20) days of the date of this Order, plaintiff must do one of the following:

1.      If he wishes to proceed with his claim against defendants Layes, Warren, Allen, Voong, and Diaz which has been dismissed with leave to amend and is able to cure the above-identified deficiencies therein, he shall file a Third Amended Complaint which cures the pleading defects set forth herein;[7] or

///

---

[5]The Court's orders herein constitute non-dispositive rulings on pretrial matters.  To the extent a party disagrees with such non-dispositive rulings, such party may file a motion for review by the assigned District Judge within fourteen (14) days.  See Local Rule 72-2.1.  To the extent a party believes the rulings to be dispositive, rather than non-dispositive, such party has the right to object to this Court's determination that the rulings are non-dispositive within fourteen (14) days. A party will be foreclosed from challenging the rulings herein if such party does not seek review thereof, or object thereto.

[6]While the Court, at this juncture, dismisses the Second Amended Complaint solely as against these five defendants, this should not be construed as validating the merits of plaintiff's claim against the other two defendants (Bonnifield and Gastelo) in any respect.

[7]The Clerk is directed to provide plaintiff with a Central District of California Civil Rights Complaint Form, CV-66, to facilitate plaintiff's filing of a Third Amended Complaint if he elects to proceed in that fashion.  Any Third Amended Complaint must:  (a) be labeled "Third Amended Complaint"; (b) be complete in and of itself and not refer in any manner to prior pleadings – *i.e.*, it must include all claims on which plaintiff seeks to proceed  (including, if plaintiff wishes to proceed thereon, the claim against defendants Bonnifield and Gastelo that the Court has not dismissed herein); (c) contain a "short and plain" statement of each of the claim(s) for relief (Fed. R. Civ. P. 8(a)); (d) make each allegation "simple, concise and direct" (Fed. R. Civ. P. 8(d)(1)); (e) set forth clearly the sequence of events giving rise to the claim(s) in sequentially "numbered paragraphs, each limited as far as practicable to a single set of circumstances" (Fed. R. Civ. P. 10(b)); (f) allege specifically what the defendant did and how that individual's conduct specifically violated plaintiff's civil rights; (g) state the names of all defendants in the caption and not include in the body of the Third Amended Complaint defendants who are not also named in the caption (Fed. R. Civ. P. 10(a)); and (h) not add defendants or claims that are not reasonably related to the claim asserted in prior pleadings in this action.

2.      If he wishes to proceed solely on his claim against remaining defendants Bonnifield and Gastelo and not to file a Third Amended Complaint, he shall file a Notice of Intent to Proceed Solely Against Defendants Bonnifield and Gastelo or sign and file the attached Partial Notice of Dismissal, in which case this action shall proceed solely against such defendants; or

3.      If he does not wish to proceed with this action at all, he shall sign and file the attached Notice of Dismissal which will result in the voluntary dismissal of this action without prejudice; or

4.      If he wishes to stand on the Second Amended Complaint despite the pleading defects set forth herein, he shall file a Notice of Intent to Stand on Second Amended Complaint, indicating plaintiff's intent to stand on the Second Amended Complaint which may result in the dismissal of this action in whole or in part based upon such defects.

**Plaintiff is cautioned that plaintiff's failure timely to file a Third Amended Complaint, a Notice of Intent to Proceed Solely Against Defendants Bonnifield and Gastelo/Partial Notice of Dismissal, a Notice of Dismissal, or a Notice of Intent to Stand on Second Amended Complaint may result in the dismissal of this action in whole or in part, with or without prejudice, on the grounds set forth above, on the ground that amendment is futile, for failure diligently to prosecute and/or for failure to comply with this Order.**

IT IS SO ORDERED.

DATED:   November 1, 2022

_____
/s/
Honorable Jacqueline Chooljian
UNITED STATES MAGISTRATE JUDGE

14